IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHARLIE DANIELS                                                                           PLAINTIFF

v.                                          Civil No. 06-4095

H.L. PHILLIPS, Sheriff, Miller
County, Arkansas; JAILER BILL
ROBINSON; SGT. SMITH;
LT. SUE NICHOLS; MIKE
GRIFFIN, Jail Warden; MS. TERRI
PORTER, jail nurse; and
DR. STRINGFELLOW                                                                      DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Charlie Daniels, (hereinafter "Daniels" or "Plaintiff"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

The events at issue in this lawsuit occurred while Daniels was incarcerated at the Miller County Detention Center. He contends his constitutional rights were violated while he was incarcerated there. Specifically, he contends he was denied adequate medical care.

Separate Defendants H.L. Phillips, Sgt. Smith, Lt. Sue Nichols, Warden Mike Griffin, Nurse Terry Porter and Jailer Bill Robinson have filed a motion for summary judgment (Doc. 49). Separate Defendant Dr. Jerry Stringfellow also filed a summary judgment motion (Doc. 49). To assist Daniels in responding to the summary judgment motions, I propounded a questionnaire (Doc. 53). He filed

a timely response to the questionnaire (Doc. 54). The summary judgment motion is now ready for decision.

## 1. Background

Daniels was booked into the Miller County Detention Center (MCDC) on March 9, 2006, on rape charges. *Plaintiff's Response* (Doc. 54)(hereinafter *Resp.*) at ¶ 1(A). Daniels was being held on pending criminal charges and on petition to revoke his probation. *Id.* at ¶ 1(B). He remained incarcerated at the MCDC until July 7, 2006, when he was transferred to the Arkansas Department of Correction (ADC). *Id.* at ¶ 2.

On May 5, 2006, Daniels verbally asked Jailer Bill Robinson to go to the medical infirmary because he had been experiencing dizziness and headaches for approximately one week. *Resp.* at ¶ 3. Daniels was taken to the infirmary and examined by Dr. Stringfellow. *Id.* at ¶ 4(A). Dr. Stringfellow took Daniels' vital signs and blood sugar count. *Id.* at ¶ 4(B). After Dr. Stringfellow examined Daniels, he told MCDC staff that Daniels needed to be taken to the emergency room for evaluation. *Id.* at ¶ 5(A). This was at approximately 5:30 or 5:40 p.m. *Id.* at ¶ 5(B). A doctor's order was written on Daniels' inmate chart on May 5th that stated he was to be taken to the emergency room for evaluation. *Id.* at ¶ 15.

Dr. Stringfellow called Nurse Porter on her cell phone and advised her that he had told Robinson that Daniels needed to go to the emergency room for evaluation. *Resp.* at ¶ 12. Nurse Porter also received a voice mail message that Daniels was being transported to the emergency room. *Id.* at ¶ 13. Daniels never spoke with Nurse Porter on May 6th. *Id.* at ¶ 14.

Daniels was transported to Wadley Medical Center Emergency Room on May 5, 2006, and admitted to the hospital. *Resp.* at ¶ 6(A). It was approximately 10:50 p.m. when he was transported

to the hospital. *Id.* at ¶ 6(B). Daniels indicates Dr. Stringfellow and the MCDC were responsible for arranging his transportation to the hospital. *Id.* at ¶ 6(D). Daniels remained hospitalized until May 9th. *Id.* at ¶ 7.

According to Defendants, May 5th was Lt. Sue Nichols' regularly scheduled day off and she was not involved in any of the events occurring that day. However, Daniels maintains Nichols was called in by Sgt. Mike Smith. *Resp.* at ¶ 8(A). Daniels asserts Nichols told the officers who were preparing to transport him to the hospital to hold-up a minute and ordered the jailers to check his vital signs again. *Id.* Daniels states Nichols asked him how he was doing. *Id.* When he responded he was "not feeling to good," Daniels indicates he was transported to the emergency room. *Id.*

Daniels had the medical conditions of hypertension and diabetes for at least four years prior to May 5th. *Resp.* at ¶ 9(A). He was seen in the emergency room in October of 2002 because of complaints of his blood pressure being too high. *Phillips' Exhibit* F.[1] Upon admission to Wadley Regional Medical Center, it was noted Daniels was having a hypertensive emergency. *Resp.* at ¶ 10(B). It was also noted that he was having "symptoms of heart failure chest pain." *Id.* A portable x-ray of his chest showed no acute cardiopulmonary disease. *Phillips' Exhibit* H; *Resp.* at ¶ 10(C).

An echocardiogram was performed on May 6th and showed Daniels' left ventricular systolic function was preserved with an EF or ejection fraction of 50 to 55%, his right atrium and right ventricular size and function were normal and right systolic function was preserved. *Phillips' Exhibit* I. No aortic insufficiency was noted. *Id.* His mitral and tricuspid valves were intact. *Id.* Daniels

---

[1] I will refer to the exhibits submitted with the summary judgment motion filed by Separate Defendants H.L. Phillips, Jailer Bill Robinson, Sgt. Smith, Lt. Sue Nichols, Warden Mike Griffin, and Nurse Terry Porter as Phillips' Exhibits. I will refer to the exhibits submitted with the summary judgment motion filed by Separate Defendant Dr. Stringfellow as Stringfellow's Exhibits.

maintains these results were obtained because they gave him "some nitroglycern to open [his] valves and arteries." *Resp.* at ¶ 10(D).

None of the records indicate any evidence of a heart attack. However, Daniels maintains his intensive care unit records are not part of the documents submitted with the other medical records by the Defendants. *Resp.* at ¶ 10(A). Daniels believes these will show his heart condition. *Id.* He also asserts that he did suffer a heart attack because the doctor at Wadley Regional Medical gave him some nitroglycerin. *Id.* at ¶ 10(E).

On May 26th, Daniels complained of chest pain to Nurse Porter and she had him taken to Wadley Regional Medical Center where he was admitted for evaluation. *Resp.* at ¶ 10(F). When he was discharged on May 30th, the discharge notes indicate he had undergone tests that ruled out a myocardial infraction or heart attack. *Id.* at ¶ 10(G).

Daniels was asked to describe how Robinson and Nurse Porter exhibited deliberate indifference to his medical needs. *Resp.* at ¶ 19, ¶ 20. Daniels replied that they had not followed Dr. Stringfellow's orders by taking Daniels to the emergency room. *Id.*

Daniels was asked to describe how Dr. Stringfellow exhibited deliberate indifference to his serious medical needs. *Resp.* at ¶ 21. He responded that Dr. Stringfellow had prior knowledge of his medical history. *Id.* Daniels points out that Dr. Stringfellow treated him for diabetes and high blood pressure in 1993 while he was incarcerated at the MCDC. *Id.* When Dr. Stringfellow examined Daniels in 2006, although he ordered Daniels taken to the emergency room, Daniels maintains Dr. Stringfellow did not ensure that the MCDC got Daniels to the emergency room. *Id.*

With respect to Warden Griffin, Daniels maintains he exhibited deliberate indifference to Daniels' serious medical needs by making a decision to take his vital signs. *Resp.* at ¶ 22. Only after

witnessing that Daniels' vital signs were still extremely high was the decision made to transport him to the emergency room. *Id.* Daniels maintains this procrastination in his transportation to the hospital constitutes deliberate indifference to his serious medical needs. *Id.*

With respect to Sgt. Smith, Daniels was asked to describe how Smith exhibited deliberate indifference to Daniels' serious medical needs. *Resp.* at ¶ 25. Daniels responded he became sick at about 6:16 p.m. *Resp.* at ¶ 25. At about 6:30 p.m., Daniels states Smith told him that they would transport him soon. *Id.* At approximately 7:30 p.m., Daniels indicates the inmates started to call Smith every fifteen minutes or so because he was getting worse. *Id.* Around 9:30 p.m., Daniels states Smith came and got him and took him up front to the dispatcher who asked Daniels who told him to go to the emergency room. *Id.* Daniels replied Dr. Stringfellow. *Id.* Daniels indicates Smith stated call Nurse Porter. *Id.*

Daniels did not personally speak to, or communicate with, Sheriff Phillips about his need for medical care. *Resp.* at ¶ 26. However, he maintains the procedures at the MCDC are inadequate for responding to detainees and prisoners with serious medical needs. *Id.* He points out that when Dr. Stringfellow ordered him to be taken to the emergency room he was not transported for four or five hours. *Id.* at ¶ 17.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient

showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Arguments of the Parties

All Defendants have now moved for summary judgment. Dr. Stringfellow contends he is entitled to summary judgment because there is no evidence of deliberate indifference on his part. Rather, he maintains Plaintiff has merely alleged that he gave an order for Plaintiff to be transported to the emergency room and this order was not followed by staff at the MCDC.

Defendants Sheriff Phillips, Sgt. Smith, Lt. Nichols, Warden Griffin, Nurse Porter, and Jailer Robinson contend there is absolutely no evidence of deliberate indifference on the part of any of the MCDC Defendants to the serious medical needs of Daniels. Defendants indicate a few hours passed as Daniels was monitored and then taken to the emergency room. However, Defendants maintain Daniels received all medical care ordered by Dr. Stringfellow or other medical personnel he saw. Furthermore, Defendants maintain there is no evidence of a custom of policy of Miller County that resulted in Daniels being denied adequate medical care.

In opposition, Daniels maintains Dr. Stringfellow failed to ensure that he was transported to the emergency room as ordered. Similarly, Daniels argues the remaining Defendants procrastinated in transporting him to the emergency room despite Dr. Stringfellow's orders.

## 4. Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for claims that detention center officials have denied inmates adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). This standard applies to all inmates, whether in pretrial or convicted status. *See id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at

1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, it is undisputed that Daniels received medical treatment. Instead, he maintains it is the delay between Dr. Stringfellow ordering Daniels to be taken for evaluation at the emergency

-8-

room and his actual transportation there that constitutes deliberate indifference to his serious medical needs. As noted above, according to Daniels he was seen by Dr. Stringfellow at the MCDC at approximately 5:30 or 5:40 p.m. *Resp.* at ¶ 5(B). Dr. Stringfellow ordered Daniels transported to the emergency room for evaluation, made a chart notation of his order, advised Robinson of the order, and phoned the MCDC's nurse, Terry Porter, regarding his order. *Resp.* at ¶ 5(A), ¶ 15, & ¶ 12.

According to Daniels, he was not transported to the emergency room until 10:50 p.m. *Resp.* at ¶ 6(A). *See also Stringfellow's Exhibit* A at page 4 (Daniels' answers to interrogatories). The MCDC Defendants indicate a "few hours passed as Mr. Daniels was monitored and then taken to the emergency room." *Phillips' Defendants' Brief* (Doc. 51) at page 1. Daniels asserts the delay in medical treatment caused him to suffer congestive heart failure more frequently. *Resp.* at ¶ 18. He also maintains his "acute renal failure" has worsened to the point where he must take medication now where before he did not have to take medication. *Id.* However, in responding to interrogatories, Daniels responded that the five hour delay in transporting him to the hospital caused him to have a heart attack. *Stringfellow's Exhibit* A (Answer to Interrogatory 3). He did not mention congestive heart failure or acute renal failure or indicate he suffered any other adverse health problems as a result of the delay. *Id.*

With respect to Dr. Stringfellow, Daniels maintains he exhibited deliberate indifference by failing to ensure that his order for Daniels to be transported to the emergency room was carried out. Given the undisputed facts are that Dr. Stringfellow noted his order on Daniels' chart, communicated the order to a jailer, and also telephoned the facility nurse, I believe Dr. Stringfellow's conduct falls far short of establishing deliberate indifference to Daniels' medical condition. "For a claim of

deliberate indifference, the prisoner must show more than negligence, more even that gross negligence. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008)(internal quotation marks and citations omitted). Dr. Stringfellow is entitled to judgment as a matter of law. There is simply no evidence of deliberate indifference on his part.

With respect to Nurse Porter, we do not believe there are any genuine issues of fact as to whether or not she was deliberately indifferent to Daniels' serious medical needs. Nurse Porter was not at the MCDC on May 6th. She received a phone call from Dr. Stringfellow stating he had told Robinson that Daniels needed to go to the emergency room for evaluation. She also received a voice mail message on that date that Daniels was being transported to the emergency room. There is no indication in the summary judgment record that she was involved in anyway in the alleged delay in transporting Daniels to the emergency room.

With respect to Robinson, Smith, Nichols[2], and Griffin, Daniels maintains they procrastinated or delayed in transporting him to the emergency room. Clearly even when medical care is ultimately provided, "a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). However, a delay in treatment is not sufficient by itself to establish an Eighth Amendment violation. "[A]n inmate who claims that delay in medical treatment rose to the level of a constitutional violation must place

---

[2] Nichols maintains she was not at the facility on May 6, 2006.

verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995). *See also Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(when inmate alleges that delay in treatment rise to level of Eighth Amendment violation, objective seriousness of deprivation should be measured by effect of delay, and to establish this effect inmate must place verifying medical evidence in record).

In this case, Daniels was clearly provided with the medical care directed by Dr. Stringfellow, he was transported to the emergency room and admitted to the hospital. The question is solely whether the MCDC Defendants exhibited deliberate indifference to Daniels' serious medical needs by not immediately transporting him to the emergency room instead of doing so several hours later.

By Daniels' own calculation only five hours passed between Dr. Stringfellow's order and his being transported to the emergency room. Daniel has failed to present any verifying medical evidence in the record to create a genuine issue of fact as to whether the delay had a detrimental effect on his health. I therefore believe the MCDC Defendants are entitled to judgment as a matter of law. The medical records from the May 5th hospital admission indicate no evidence of Daniels suffering a heart attack. *See Phillips' Exhibit* H (chest x-ray; no acute pulmonary disease); *Phillips' Exhibit* I (echo-cardiogram report). The records indicate Daniels reported a past medical history of hypertension, diabetes, and chronic renal failure. *Phillips' Exhibits* G& I. The admission papers from Daniels' May 26th admission also indicate he reported a past medical history of hypertension, diabetes, and chronic renal failure. *Phillips' Exhibit* J.

Other than Daniels' bare allegation that his acute renal failure has now worsened to the point he has to take medication, *resp.* at ¶ 18, there is nothing to suggest the alleged worsening or progression of this disease is attributable to the "five hour delay" in his being taken to the emergency

room on May 6, 2006. Daniels has submitted no medical records and has not indicated when he began taking medication. He merely states his "acute renal failure have worsen to the point that I have to take medication now, where as before I was not taken medication for acute renal failure." *Id.* This is simply insufficient.

Similarly, with respect to the alleged congestive heart failure, Daniels merely asserts that he now has congestive heart failure disease more frequently. *Resp.* at ¶ 18. There is nothing to suggest the alleged worsening or progression of this disease is attributable to the "five hour delay" in his being taken to the emergency room on May 6, 2006.

With respect to Sheriff Phillips, there is no evidence he was personally involved in making any decisions regarding Daniels' medical care. Nor is there any evidence that he knew of Daniels' medical problems or of Dr. Stringfellow's order that Daniels be transported to the emergency room for evaluation. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(*respondeat superior* liability not permissible under § 1983); *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). There is simply no basis on which Sheriff Phillips can be held liable. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

### 5. Conclusion

For the reasons stated, I recommend that the motion for summary judgment filed by Separate Defendants H.L. Phillips, Sgt. Smith, Lt. Sue Nichols, Warden Mike Griffin, Nurse Terry Porter and Jailer Bill Robinson (Doc. 49) be granted and all claims against them dismissed. I further

recommend that the motion for summary judgment filed by Separate Defendant Dr. Jerry Stringfellow (Doc. 49) be granted and all claims against him be dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 20th **day of August 2008.**

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE